UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

RENEE KNOWLES,

    Plaintiff,

v.                                                                                    CASE No. 8:20-cv-1545-T-SPF

KILOLO KIJAKAZI,[1]
Acting Commissioner of the
Social Security Administration,

    Defendant.
_____/

**ORDER**

    Plaintiff seeks judicial review of the denial of her claim for a period of disability and Supplemental Security Income ("SSI"). As the Administrative Law Judge's ("ALJ") decision was based on substantial evidence and employed the proper legal standards, the Commissioner's decision is affirmed.

    **I.**    **Procedural Background**

    Plaintiff filed an application for a period of disability and SSI (Tr. 304-10).[2] The Commissioner denied Plaintiff's claims both initially and upon reconsideration (Tr. 132-88). Plaintiff then requested an administrative hearing (Tr. 232-34). Per Plaintiff's request, the ALJ held a hearing at which Plaintiff appeared and testified (Tr. 32-73). Following the

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021 and is substituted as Defendant in this suit pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

[2] All references to "Tr." refer to the transcript and page numbers of the Social Security administrative record filed on September 25, 2020 (Doc. 22).

hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly denied Plaintiff's claims for benefits (Tr. 12-31). Subsequently, Plaintiff requested review from the Appeals Council ("AC"), which the AC denied (Tr. 1-6). Plaintiff then timely filed a complaint with this Court (Doc. 1). The case is now ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

## II.     Factual Background and the ALJ's Decision

Plaintiff, who was born in 1957, claimed disability beginning January 1, 2012, due to migraines, bipolar disorder, depression, mental impairments, and hearing loss (Tr. 328). Plaintiff has a high school education and past relevant work experience as a customer service representative, a car wash technician, a cashier, and a fast-food worker (Tr. 24. 329).

In rendering the administrative decision, the ALJ concluded that Plaintiff had not engaged in substantial gainful activity since June 8, 2017, the application date (Tr. 17).[3] After conducting a hearing and reviewing the evidence of record, the ALJ determined Plaintiff had the following severe impairments: hearing loss, bipolar disorder, and depression (*Id.*). Notwithstanding the noted impairments, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 18). The ALJ then concluded that Plaintiff retained the residual functional capacity ("RFC") to perform medium work as defined in 20 C.F.R. § 416.967(c) (Tr. 18). The ALJ determined that Plaintiff "can lift up to 50 pounds occasionally and lift and carry up to 25 pounds frequently. The claimant is limited

---

[3] Plaintiff worked part-time jobs at Wal-Mart and Firehouse Subs after her application date, but the ALJ found that this work did not rise to the level of substantial gainful activity ("SGA") (Tr. 17).

to occupations that do[ ] not require fine hearing. The claimant must avoid concentrated exposure to hazards. The claimant is limited to understanding, remembering, carrying out, and performing simple routine tasks and instructions. The claimant can have no more than occasional changes in a work setting." (Tr. 19-20). In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence (Tr. 21).

Given Plaintiff's background and RFC, the vocational expert ("VE") testified that Plaintiff could perform other jobs existing in significant numbers in the national economy, such as laundry worker, crate liner, and hand packager (Tr. 25). Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled (*Id.*).

### III. Legal Standard

To be entitled to benefits, a claimant must be disabled, meaning he or she must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities, which are

demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Social Security Administration, to regularize the adjudicative process, promulgated detailed regulations that establish a "sequential evaluation process" to determine if a claimant is disabled. 20 C.F.R. § 416.920. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. § 416.920(a). Under this process, the ALJ must determine, in sequence, the following: whether the claimant is currently engaged in substantial gainful activity; whether the claimant has a severe impairment, *i.e.*, one that significantly limits the ability to perform work-related functions; whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404 Subpart P, Appendix 1; and whether the claimant can perform his or her past relevant work. If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of his or her age, education, and work experience. 20 C.F.R. § 416.920(a). A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. § 416.920(g).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938) (internal quotation marks omitted)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). While the court reviews

the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citations omitted).

In reviewing the Commissioner's decision, the court may not re-weigh the evidence or substitute its own judgment for that of the ALJ even if it finds that the evidence preponderates against the ALJ's decision. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Keeton*, 21 F.3d at 1066. The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

### IV. Analysis

Plaintiff argues the ALJ: (1) erred in evaluating her subjective pain complaints, and (2) did not develop a full and fair record (Doc. 29 at 7-22). For the following reasons, the Court finds substantial evidentiary support for the ALJ's decision.

#### A. Subjective pain complaints

Plaintiff contends the ALJ ran afoul of Social Security Ruling 16-3p when he discounted Plaintiff's complaints of disabling migraines (Doc. 29 at 8). The Eleventh Circuit has crafted a pain standard to apply to claimants who attempt to establish disability through their own testimony of subjective complaints. The standard requires evidence of an underlying medical condition and either (1) objective medical evidence that confirms the

severity of the alleged pain arising from that condition, or (2) that the objectively determined medical condition is of such a severity that it can reasonably be expected to give rise to the alleged pain. *See Holt v. Sullivan*, 921 F.2d 1221 (11th Cir. 1991). When the ALJ decides not to credit a claimant's testimony as to her pain, the ALJ must articulate explicit and adequate reasons. *Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995).

Social Security Ruling 16-3p cautions that "subjective symptom evaluation is not an examination of an individual's character." *Id.* Adjudicators, as the regulations dictate (*see* 20 C.F.R. § 416.929), are to consider all the claimant's symptoms, including pain, and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence in the record. *Id.* The regulations define "objective evidence" to include medical signs shown by medically acceptable clinical diagnostic techniques or laboratory findings. 20 C.F.R. § 416.929. "Other evidence" includes evidence from medical sources, medical history, and statements about treatment the claimant has received. *See* 20 C.F.R. § 416.913. Subjective complaint evaluations are the province of the ALJ. *Mitchell v. Comm'r of Soc. Sec.*, 771 F.3d 780, 782 (11th Cir. 2014).

Here, the ALJ relied on largely boilerplate language in assessing Plaintiff's subjective pain complaints:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

(R. 21). This language directly addresses the Eleventh Circuit's pain standard and is not improper *if* supported by substantial evidence. *See Danan v. Colvin*, 8:12-cv-7-T-27TGW, 2013 WL 1694856, at * 3 (M.D. Fla. Mar. 15, 2013).

      Here, it is. After weighing Plaintiff's testimony and the medical records, the ALJ found at step two that Plaintiff's migraines are non-severe.[4] The ALJ summarized Plaintiff's complaints: "She testified that she gets stressed easily." (*Id.*) Regarding her migraines, "she testified that she has been having them for many years and she experience[s] migraine headaches two to three times a month even with her medication. She testified that her last migraine was about two months prior to the hearing. The claimant testified that sometimes her medications make[ ] her feel better and other times it makes her condition worse." (R. 20-21) The ALJ also noted Plaintiff's testimony that she can take care of her personal hygiene needs, shop for groceries for herself and her live-in mother, cook basic meals, clean her two-bedroom apartment, work part-time, go to the pool and walk around her apartment complex for exercise, and take care of her mother (with the help of a home health nurse) (Tr. 24).

      At her hearing, Plaintiff testified that when a migraine hits, "[m]y whole left side is hurt[ ], my ear, my eye, my neck, and it goes down into my arm and leg." (Tr. 49). Sometimes her migraines will last a day but "the last one I had was three days." (Tr. 50). Regarding her pain level, her migraine medication sometimes helps, but her bipolar medication sometimes

---

[4] To the extent Plaintiff takes issue with the ALJ's step two finding, this argument is unavailing. The ALJ found Plaintiff suffers from other severe impairments, which is all that is required at step two of the sequential evaluation process. *See Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987); *Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 825 (11th Cir. 2010) ("Nothing requires that that ALJ must identify, at step two, all of the impairments that should be considered severe.").

makes the pain worse (Tr. 51). She estimated that six times in the past two years she experienced a migraine at work that forced her to leave early and go home (Tr. 50).

But Plaintiff's testimony regarding her daily activities belies complaints of disabling pain. She testified she babysits for her friend's son to make extra money, and she takes care of her mom, who has Alzheimer's and needs help getting in and out of bed, grocery shopping, and cleaning up (Tr. 47-48). Plaintiff's typical day consists of getting her mom "whatever she needs and then I go take a shower. And then get ready to go wherever I'm going. To the grocery store, I go to the pool for exercise." (Tr. 69) She walks for 15 minutes twice a day around her apartment complex for exercise (Tr. 69). If she decides not to go to the pool, it is because "there's nobody there and I don't like being by myself." (Tr. 54). She wrote on an agency form that she "cannot stand for long periods of time," (Tr. 342) yet she testified she stood all day during her shifts at her part-time jobs (after her application date) and that she can stand for four hours before needing to sit (Tr. 63). She testified she was fired from Wal-Mart and Firehouse Subs because she forgot to show up (Tr. 43, 46).

Neither do Plaintiff's medical records tell the story of someone with disabling pain, migraine or otherwise. Plaintiff's treatment providers diagnosed her with migraines and prescribed medication, but they did not assess functional limitations associated with them. Plaintiff obtained mental health treatment from Embracing Life Wellness Center from 2012 through 2019 (Tr. 483-520, 575-80, 587-649). In May 2016, Plaintiff reported to Sarah Cash, A.R.N.P., that she was feeling better on medication and denied depression or anxiety symptoms (Tr. 500). Then, in November 2016, she told Ms. Cash she was experiencing anhedonia (a reduced ability to feel pleasure) and feeling isolated due to her mother's

8

progressing Alzheimer's (Tr. 506). Plaintiff mentioned to Ms. Cash that she had just been discharged from the hospital after recovering from a five-day headache and was scheduled to see a neurologist the next day (*Id.*).[5] Neurologist Vivian Faircloth, M.D. treated Plaintiff later that month (November 2016). Plaintiff had a normal brain scan, was alert and oriented times three, and had normal motor strength and reflexes (Tr. 460-62). Dr. Faircloth assessed Plaintiff with migraines with auras (Tr. 462). She switched Plaintiff to Topamax because Fioricet was causing rebound headaches (*Id.*).

Plaintiff's mood improved by her December 2016 appointment with Ms. Cash: "She feels her mood is improving and her irritability has decreased. Her anxiety attacks are better controlled. She is happy with her regimen and would like to continue." (Tr. 508). In May 2017, she told Ms. Cash "her ex may have lost his job or quit his job because she is no longer getting alimony. She is now working with an employment agency to get her back into the work field. She has two part time jobs doing babysitting and housekeeping type work, but this is not enough to survive on." (Tr. 510) The next month, Ms. Cash observed that Plaintiff is "high functioning and goal oriented. She denies any impairing symptoms at this time and feels that once she obtains a job she will be feeling an improvement. Client's pain has been improving through therapy which is promising for a future career." (Tr. 513).

By November 2017, Plaintiff was unhappy with her job at Wal-Mart and had stopped taking all her medications except for Xanax due to cost. Ms. Cash found discounts for

---

[5] Plaintiff spent two days in the hospital in October 2016. Her mom called 911 after noticing she had taken 55 out of 100 of her Fiorcet tablets within three days of filling the prescription. Doctors eventually discovered Plaintiff had overdosed on Tylenol rather than Fiorcet. After her symptoms subsided, she was discharged with referrals to a psychiatrist and a neurologist (Tr. 521-24).

Plaintiff's medication through Goodrx.com, and Plaintiff said she would start on her regimen again (Tr. 575-76). In February 2018, Plaintiff told Ms. Cash, "life is better on medication." (Tr. 624). She was feeling "pretty good." (*Id.*) She did not like her Wal-Mart job but "is enjoying life again and denies isolation. She is baby sitting again and when she is off she will go to church." (*Id.*)

In May 2018, Plaintiff told Indrani Datta, M.D. of Suncoast Community Health Centers that she had woken up with a headache on the left side of her head for about three weeks (Tr. 695). Dr. Datta refilled Plaintiff's topiramate (Topamax) prescription (*Id.*). In August 2018 and January 2019, Plaintiff did not mention her headaches during routine appointments at Suncoast Community Health Centers (Tr. 686). Also in August 2018, she reported to Ms. Cash that she was depressed about her mom's health, but her depression did not interfere with her ability to function. Her symptoms were mild, and she was "happy with her regimen." (Tr. 638).

Considering this, Plaintiff has not shown that the ALJ ran afoul of the Eleventh Circuit's pain standard. *See Holt*, 921 F.2d at 1221. Plaintiff does not argue the ALJ's reasons for discounting her subjective complaints were improper. Neither does she point to evidence of work-related limitations associated with her migraines. *See Green v. Comm'r of Soc. Sec.*, No. 6:17-cv-1210-Orl-41GJK, 2018 WL 3150248, at * 3 (M.D. Fla. May 7, 2018) (finding ALJ not required to incorporate limitations related to claimant's severe headaches when medical record did not reflect work-related functional limitations). Instead, she highlights medical records that confirm she has them. But this is not enough. *See Moore v. Barnhart*, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005) (explaining that mere diagnosis of impairments "does not

reveal the extent to which they limit her ability to work or undermine the ALJ's [RFC] determination."); 20 C.F.R. § 416.929(a) (subjective complaints alone insufficient to establish work-related limitation). The ALJ articulated specific and adequate reasons for discrediting Plaintiff's subjective complaints, including that Plaintiff was able to work part-time (Tr. 21). *Foote*, 67 F.3d at 1561-62; *Cooper v. Comm'r of Soc. Sec.*, 521 F. App'x 803, 808 (11th Cir. 2013) (citing 20 C.F.R. § 404.1571 and finding "[e]ven if a claimant's current employment status is not at the level of SGA, it may indicate that she is able to do more work."). To the extent Plaintiff asks the Court to re-weigh the evidence or substitute its opinion for that of the ALJ, it cannot. If the ALJ's findings are based on the correct legal standards and are supported by substantial evidence – as they are here – the Commissioner's decision must be affirmed even if the undersigned would have reached a different conclusion. *See Bloodsworth*, 703 F.2d at 1239. On this record, the ALJ did not err in considering Plaintiff's subjective complaints.[6]

### B. Full and Fair Record

Next, Plaintiff argues the ALJ's decision is not supported by substantial evidence because it is not based on a full and fair record. Social Security proceedings are inquisitorial rather than adversarial, and the ALJ has the duty "to investigate the facts and develop the arguments both for and against granting benefits." *Sims v. Apfel*, 530 U.S. 103, 110-11 (2000).

---

[6] The undersigned reiterates that, when reviewing an ALJ's decision, the Court's job is to determine whether the administrative record contains enough evidence to support the ALJ's factual findings. *See* 42 U.S.C. § 405(g); *Biestek v. Berryhill*, ___ U.S. ___; 139 S.Ct. 1148, 1154 (2019). "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Id.* In other words, the Court is not permitted to reweigh the evidence or substitute its own judgment for that of the ALJ even if it finds the evidence preponderates against the ALJ's decision. *See Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

The ALJ "has a basic obligation to develop a full and fair record." *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). But "there must be a showing of prejudice before it is found that the claimant's right to due process has been violated to such a degree that the case must be remanded to the [Commissioner]" to develop the record. *Graham v. Apfel*, 129 F.3d 1420, 1423 (11th Cir. 1997). "The court should be guided by whether the record reveals evidentiary gaps which result in unfairness or clear prejudice." *Id*. (internal citation and quotation marks omitted).

Plaintiff filed an earlier application for disability insurance benefits ("DIB"), alleging disability as of June 2007. And in 2013, the same ALJ who denied Plaintiff's SSI claim in this case denied the DIB claim (Tr. 104-17). In the 2013 decision, the ALJ found Plaintiff had the severe impairments of degenerative disc disease of the cervical and lumbar spine and osteoarthritis (in addition to headaches, major depression, and anxiety) and had the RFC for less than a full range of light work (Tr. 107, 109-10); here, Plaintiff's severe impairments are hearing loss, bipolar disorder, and depression, and the ALJ found Plaintiff capable of medium work (Tr. 17, 19-20). Plaintiff points out that "[i]t is generally accepted and well known that degenerative joint disease does not go away or improve over time." (Doc. 29 at 18). Citing no legal authority, she continues: "Given the fact that the same [ALJ] found the claimant could do light work when she was under 55 years old, but could perform medium work, now that she is over 55 years old, is a consideration which should be taken into account, in determining whether the record was properly developed." (*Id*.)

Plaintiff overlooks that her two applications are separate, distinct, and unrelated. Evidence contained in her prior application was "completely irrelevant" to the instant

application. *McKinzie v. Comm'r of Soc. Sec.*, 362 F. App'x 71, 73 (11th Cir. 2010) (quoting *Reynolds v. Bowen*, 844 F.2d 451, 453-54 (7th Cir. 1988) and finding ALJ did not err in declining to defer to prior RFC limitation). Administrative res judicata applies when the agency has made a previous final determination or decision regarding the claimant's rights on the same facts and issues. 20 C.F.R. § 404.957(c)(1); *Cash v. Barnhart*, 327 F.3d 1252, 1254-55 (11th Cir. 2003). The ALJ's 2013 decision addressed the time period of June 1, 2007 (Plaintiff's alleged onset date in her first application), through June 30, 2009 (Plaintiff's date of last insured) (Tr. 117). Here, the relevant period for Plaintiff's SSI claim is the month she filed her application (June 2017) through the date of the ALJ's decision (August 7, 2019) (Tr. 26, 145). *See* 20 C.F.R. §§ 416.330, 416.335. Consequently, the ALJ did not err in declining to give preclusive effect to his earlier RFC assessment. *Moreno v. Astrue*, 366 F. App'x 23, 27 (11th Cir. 2010) (affirming ALJ's decision to not give preclusive effect to earlier RFC determination because claimant's "instant application concerned an unadjudicated time period.").

If Plaintiff is making the subtler argument that the ALJ should have at least considered his prior decision when formulating Plaintiff's RFC, she does not support this argument with citations to the law or the facts. On agency forms, when asked to list "all of the physical or mental conditions (including emotional or learning problems) that limit your ability to work," Plaintiff wrote: "migraines, bipolar, depression, mental hearing loss." (Tr. 328). And on agency forms asking Plaintiff to list her medical providers and the purpose of her treatment, she did not list treatment for back impairments (Tr. 331-32, 349-51, 361-65). The Commissioner has the burden of developing a claimant's complete medical history for at least

13

the 12 months preceding the month in which the application was filed. 20 C.F.R. § 416.912(b)(1). Plaintiff has not argued the ALJ failed to develop the record for the 12 months preceding her application, and the medical records date back to 2011. On this record, Plaintiff's second argument fails.

### V.     Conclusion

Accordingly, after consideration, it is hereby **ORDERED**:

1. The decision of the Commissioner is affirmed.

2. The Clerk is directed to enter final judgment in favor of the Defendant and close the case.

**ORDERED** in Tampa, Florida, on February 15, 2022.

SEAN P. FLYNN
UNITED STATES MAGISTRATE JUDGE